## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

---

LISA M. STEWART,                                Docket No.:

    Plaintiff,

v.                                              **COMPLAINT AND DEMAND
                                                FOR JURY TRIAL**

SHARKNINJA OPERATING, LLC,

    Defendant.

---

### COMPLAINT

Plaintiff, **LISA M. STEWART**, (hereafter referred to as "Plaintiff"), by and through her undersigned counsel, **JOHNSON BECKER, PLLC** and **KLINE & SPECTER, P.C.**, hereby submits the following Complaint and Demand for Jury Trial against Defendant **SHARKNINJA OPERATING, LLC** (hereafter referred to as "Defendant SharkNinja" and "Defendant"), alleges the following upon personal knowledge and belief, and investigation of counsel:

### NATURE OF THE CASE

1.      Defendant SharkaNinja Operating, LLC designs, manufactures, markets, imports, distributes and sells a wide-range of consumer products, including the subject "Ninja Foodi Deluxe Tendercrisp Pressure Cooker," which specifically includes the OP402QCN model (referred to hereafter as "pressure cooker(s)" or

"Subject Pressure Cooker") that is at issue in this case.

2.      Defendant touts the "safety" of its pressure cookers, and states that they cannot be opened while in use.[1]  Despite Defendant's claims of "safety," it designed, manufactured, marketed, imported, distributed, and sold, both directly and through third-party retailers, a product that suffers from serious and dangerous defects.  Said defects cause significant risk of bodily harm and injury to its consumers.

3.      Specifically, said defects manifest themselves when, despite Defendant's statements, the lid of the pressure cooker is removable with built-up pressure, heat, and steam still inside the unit.  When the lid is removed under such circumstances, the pressure trapped within the unit causes the scalding hot contents to be projected from the unit and into the surrounding area, including onto the unsuspecting consumers, their families, and other bystanders. In this case, the lid of the pressure cooker was able to be opened or removed while the pressure cooker retained pressure, causing Plaintiff serious and substantial bodily injuries and damages.

4.      Defendant knew or should have known of these defects, but has nevertheless put profit ahead of safety by continuing to sell its pressure cookers to consumers, failing to warn said consumers of the serious risks posed by the defects, and failing to recall the dangerously defective pressure cookers regardless of the risk of significant injuries to Plaintiff and consumers like her.

---

[1] *See, e.g.* "Ninja Foodi Deluxe Tendercrips Pressure Cooker OP401" Owner's Guide, pgs. 4, 15, 22.  A copy of the User Manual is attached hereto as "Exhibit A."

5.     Defendant ignored and/or concealed its knowledge of these defects in its pressure cookers from the Plaintiff in this case, as well as the public in general, in order to continue generating a profit from the sale of said pressure cookers, demonstrating a callous, reckless, willful, depraved indifference to the health, safety and welfare of Plaintiff and consumers like her.

6.     As a direct and proximate result of Defendant's conduct, Plaintiff in this case incurred significant and painful bodily injuries, medical expenses, physical pain, mental anguish, and diminished enjoyment of life.

## PLAINTIFF LISA M. STEWART

7.     Plaintiff Lisa M. Stewart is a resident and citizen of the city of Glen Rock, County of York, State of Pennsylvania.  Plaintiff therefore is a resident and citizen of the State of Pennsylvania for purposes of diversity pursuant to 28 U.S.C. § 1332.

8.     On or about April 8, 2021, Plaintiff suffered serious and substantial burn injuries as the direct and proximate result of the pressure cooker's lid's ability to be rotated and opened while the pressure cooker was still under pressure, during the normal, directed us of the pressure cooker, allowing its scalding hot contents to be forcefully ejected from the pressure cooker and onto Plaintiff.  The incident occurred as a result of the failure of the pressure cooker's supposed "safety mechanisms" which purport to keep the consumer safe while using the pressure cooker.  In

addition, the incident occurred as a result of Defendant's failure to redesign the pressure cooker, despite the existence of economical, safer alternative designs.

## DEFENDANT SHARKNINJA OPERATING, LLC

9.     Defendant SharkNinja designs, manufacturers, markets, imports, distributes and sells a variety of consumer products, including the subject "Ninja Foodi Deluxe Tendercrisp" pressure cookers.

10.    Defendant SharkNinja is a Massachusetts Limited Liability Company incorporated in the State of Delaware and has a principal place of business located at 89 A St. # 100, Needham, MA 02494. Defendant SharkNinja has a registered service address Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801.

11.    At the time of Plaintiff's injuries and the filing of this lawsuit, the sole member of SharkNinja Operating, LLC was EP Midco, LLC, a Massachusetts Limited Liability Company created and organized under the law of the State of Delaware and located at 89 A St. # 100, Needham, MA 02494.

12.    At the time of Plaintiff's injuries and the fling of this lawsuit, the sole member of EP Midco, LLC was Brian Lagarto.

13.    Mr. Lagarto is a resident and citizen of the state of Massachusetts, and operates out of his principal places of business, 180 Wells Avenue, Suite 200, Newton, Massachusetts, 02459.

14.    Accordingtly, Defendant SharkNinja is a resident and citizen of the State of Massachusetts for purposes of diversity jurisdiction under 28 U.S.C. § 1332.

## JURISDICTION AND VENUE

15.    This Court has subject matter jurisdiction over this case pursuant to diversity jurisdiction as prescribed by 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and there is complete diversity between the parties.

16.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 in that all or a substantial part of the events or omissions giving rise to this claim occurred in this district.

17.    Venue is also proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant has sufficient minimum contacts with the State of Pennsylvania and intentionally availed itself of the markets within the State of Texas through the promotion, sale, marketing, and distribution of its products.

## FACTUAL BACKGROUND

18.    Defendant SharkNinja is engaged in the business of designing, manufacturing, warranting, marketing, importing, distributing and selling the pressure cookers at issue in this litigation.

19.    Defendant SharkNinja warrants, markets, advertises and sell its pressure cookers as a means to make cooking "easy" and "convenient," allowing consumers to "cook 70% faster than traditional cooking method[s]." [2]

20.    Defendant SharkNinja boasts that its pressure cookers have "UL-Certified safety mechanisms," [3] which purport to keep the user safe while cooking.

21.    For example, according to the Owner's Guide accompanying each individual unit sold, the pressure cookers come equipped with safety features that prevent the lid from being removed until the unit has "completely depressurized":

> **NOTE:** The pressure lid will not unlock until the unit is completely depressurized.

*See*, Ninja OP401 Owner's Guide, pg. 15

22.    The Owner's Guide further states that, "[a]s the unit pressurizes, the lid will lock as a safety measure, and it will not unlock until pressure is released"[4] and that "[if] the lid will not turn to unlock, this indicates the appliance is still under pressure…When steam is completely released the float valve will be in the lower position allowing the lid to be removed."[5]

23.    By reason of the forgoing acts or omissions, the above-named Plaintiff and/or her family purchased and used the pressure cooker with the reasonable expectation

---

[2] https://www.ninjakitchen.com/tendercrisp-foodi-technology/ (last accessed April 3, 2023).
[3] *Id*.
[4] *Id*. at pg. 15.
[5] *Id*. at pg. 4.

that it was properly designed and manufactured, free from defects of any kind, and that it was safe for its intended, foreseeable use of cooking.

24.    On or about April 8, 2021, Plaintiff was using the pressure cooker designed, manufactured, marketed, imported, distributed and sold by Defendant SharkNinja for its intended and reasonably foreseeable purpose of cooking for her family.

25.    While the pressure cooker was in use for cooking, the pressure cooker's lid unexpectedly and suddenly blew off the pot in an explosive manner. The contents of the pressure cooker were forcefully ejected out of the pot and onto Plaintiff, causing severe, disfiguring burns.

26.    Plaintiff and her family used the pressure cooker for its intended purpose of preparing meals and did so in a manner that was reasonable and foreseeable by the Defendant SharkNinja.

27.    However, the aforementioned pressure cooker was defectively and negligently designed and manufactured by the Defendant SharkNinja in that it failed to properly function as to prevent the lid from being removed with normal force while the unit remained pressurized, despite the appearance that all the pressure had been released, during the ordinary, foreseeable and proper use of cooking food with the product; placing the Plaintiff, her family, and similar consumers in danger while using the pressure cookers.

28.    Defendant SharkNinja's pressure cookers possess defects that make them unreasonably dangerous for their intended use by consumers because the lid can be rotated and opened while the unit remains pressurized.

29.    Further, Defendant SharkNinja's representations about "safety" are not just misleading, they are flatly wrong, and put innocent consumers like Plaintiff directly in harm's way.

30.    Economic, safer alternative designs were available that could have prevented the pressure cooker's lid from being rotated and opened while pressurized.

31.    As a direct and proximate result of Defendant's intentional concealment of such defects, its failure to warn consumers of such defects, its negligent misrepresentations, its failure to remove a product with such defects from the stream of commerce, and its negligent design of such products, Plaintiff and her daughter used an unreasonably dangerous pressure cooker, which resulted in significant and painful bodily injuries to Plaintiff.

32.    Consequently, the Plaintiff in this case seeks compensatory damages resulting from the use of Defendant SharkNinja's pressure cooker as described above, which has caused the Plaintiff to suffer from serious bodily injuries, medical expenses, physical pain, mental anguish, diminished enjoyment of life, and other damages.

## CLAIMS FOR RELIEF

### COUNT I
### STRICT LIABILITY

33.     Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

34.     At the time of Plaintiff's injuries, Defendant SharkNinja's pressure cookers were defective and unreasonably dangerous for use by foreseeable consumers, including Plaintiff.

35.     Defendant SharkNinja's pressure cookers were in the same or substantially similar condition as when they left the possession of Defendant when Plaintiff used her pressure cooker on April 8, 2021.

36.     Plaintiff did not misuse or materially alter the pressure cooker, including through her use on April 8, 2021.

37.     The pressure cookers did not perform as safely as an ordinary consumer would have expected them to perform when used in a reasonably foreseeable way.

38.     Further, a reasonable person would conclude that the possibility and serious of harm outweighs the burden or cost of making the pressure cookers safe. Specifically:

> a.  The pressure cookers designed, manufactured, sold, and supplied by Defendant were defectively designed and placed into the stream of commerce in a defective and unreasonably dangerous condition for consumers;

    b. The seriousness of the potential burn injuries resulting from the product drastically outweighs any benefit that could be derived from its normal, intended use;

    c. Defendant failed to properly market, design, manufacture, distribute, supply, and sell the pressure cookers, despite having extensive knowledge that the aforementioned injuries could and did occur;

    d. Defendant failed to warn and place adequate warnings and instructions on the pressure cookers;

    e. Defendant failed to adequately test the pressure cookers; and

    f. Defendant failed to market an economically feasible alternative design, despite the existence of the aforementioned economical, safer alternatives, that could have prevented the Plaintiff' injuries and damages.

39. Defendant SharkNinja's actions and omissions were the direct and proximate cause of the Plaintiff's injuries and damages.

**WHEREFORE**, Plaintiff demands judgment in her favor and against Defendant SharkNinja for damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper. Plaintiff reserves the right to amend the complaint to seek punitive damages if and when evidence or facts supporting such allegations are discovered.

### COUNT II
### NEGLIGENCE

40. Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

41.   Defendant SharkNinja has a duty of reasonable care to design, manufacture, market, and sell non-defective pressure cookers that are reasonably safe for their intended uses by consumers, such as Plaintiff and her family.

42.   Defendant SharkNinja failed to exercise ordinary care in the manufacture, sale, warnings, quality assurance, quality control, distribution, advertising, promotion, sale and marketing of its pressure cookers in that Defendant knew or should have known that said pressure cookers created a high risk of unreasonable harm to the Plaintiff and consumers alike.

43.   Defendant SharkNinja was negligent in the design, manufacture, advertising, warning, marketing and sale of its pressure cookers in that, among other things, it:

> a.  Failed to use due care in designing and manufacturing the pressure cookers to avoid the aforementioned risks to individuals;
>
> b.  Placed an unsafe product into the stream of commerce;
>
> c.  Aggressively over-promoted and marketed its pressure cookers through television, social media, and other advertising outlets; and
>
> d.  Were otherwise careless or negligent.

44.   Despite the fact that Defendant SharkNinja knew or should have known that consumers were able to remove the lid while the pressure cookers were still pressurized, Defendant continued to market its pressure cookers to the general public (and continues to do so).

**WHEREFORE**, Plaintiff demands judgment in her favor and against Defendant SharkNinja for damages, together with interest, costs of suit, attorneys'

fees, and all such other relief as the Court deems proper.  Plaintiff reserves the right to amend the complaint to seek punitive damages if and when evidence or facts supporting such allegations are discovered.

**COUNT III**
**BREACH OF EXPRESS WARRANTY**

45.    Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

46.    Defendant expressly warranted that its pressure cookers were safe and effective to members of the consuming public, including Plaintiff and her family. Moreover, Defendant expressly warranted that the lid of the pressure cooker could not be removed while the unit remained pressurized.  Specifically:

    a.  "If the lid will not turn to unlock, this indicates the appliance is still under pressure…When steam is completely released the float valve will be in the lower position allowing the lid to be removed."[6]

    b.  "As the unit pressurizes, the lid will lock as a safety measure, and it will not unlock until pressure is released."[7]

    c.  "**NOTE:** The pressure lid will not unlock until the unit is completely depressurized."[8] (Emphasis in original)

    d.  "As a safety feature, the pressure lid will not unlock until the unit is completely depressurized."[9]

---

[6] *Id*. at pg. 4.
[7] *Id.* at pg. 15.
[8] *Id*.
[9] *Id*. at pg. 22.

e. "As the unit pressurizes, the red float valve will raise, and the lid will lock as a safety measure.  It will not unlock until pressure is released and the read float valve drops down."[10]

f. "As a safety precaution, you must wait until the cook cycle is complete and all steam has been released in order to open the pressure lid.  You will be able to open [sic] the float valve drops fully."[11]

47.    Members of the consuming public, including consumers such as Plaintiff, were the intended third-party beneficiaries of the warranty.

48.    Defendant marketed, promoted, and sold its pressure cookers as a safe product, complete with "UL-certified safety mechanisms."

49.    Defendant's pressure cookers do not conform to these express representations because the lid can be removed using normal force while the units remain pressurized, despite the appearance that the pressure has been released, making the pressure cookers not safe for use by consumers.

50.    Defendant breached its express warranties in one or more of the following ways:

a. The pressure cookers as designed, manufactured, sold and/or supplied by the Defendant, were defectively designed, and placed into the stream of commerce by Defendant in a defective and unreasonably dangerous condition;

b. Defendant failed to warn and/or place adequate warnings and instructions on their pressure cookers;

---

[10] https://support.ninjakitchen.com/hc/en-us/articles/4403151923602-OP300-OP400-Series-Ninja-Foodi-Tendercrisp-Pressure-Cooker-FAQs- (last accessed April 3, 2023).
[11] https://support.ninjakitchen.com/hc/en-us/articles/4405604630930-OP300-OP400-Series-Ninja-Foodi-Tendercrisp-Pressure-Cooker-Troubleshooting-Guide (last accessed April 3, 2023).

   c.  Defendant failed to adequately test its pressure cookers; and

   d.  Defendant failed to provide timely and adequate post-marketing
       warnings and instructions after they knew the risk of injury from their
       pressure cookers.

51.    Plaintiff used the pressure cooker with the reasonable expectation that it was

properly designed and manufactured, free from defects of any kind, and that it was

safe for its intended, foreseeable use of cooking.

52.    Plaintiff's injuries were the direct and proximate result of Defendant's breach

of its express warranties.

       **WHEREFORE**, Plaintiff demands judgment in her favor and against

Defendant SharkNinja for damages, together with interest, costs of suit, attorneys'

fees, and all such other relief as the Court deems proper.  Plaintiff reserves the right

to amend the complaint to seek punitive damages if and when evidence or facts

supporting such allegations are discovered.

## COUNT IV
## BREACH OF IMPLIED WARRANTY OF FITNESS
## FOR A PARTICULAR PURPOSE

53.    Plaintiff incorporates by reference each preceding and succeeding paragraph

as though set forth fully at length herein.

54.    Defendant manufactured, supplied, and sold its pressure cookers with an

implied warranty that they were fit for the particular purpose of cooking quickly,

efficiently and safely.

14

55.    Members of the consuming public, including consumers such as the Plaintiff, were the intended third-party beneficiaries of the warranty.

56.    Defendant SharkNinja's pressure cookers were not fit for the particular purpose as a safe means of cooking, due to the unreasonable risks of bodily injury associated with their use.

57.    Plaintiff reasonably relied on Defendant's representations that its pressure cookers were a quick, effective and safe means of cooking.

58.    Defendant's breach of the implied warranty of fitness for a particular purpose was the direct and proximate cause of Plaintiff's injuries and damages.

**WHEREFORE**, Plaintiff demands judgment in her favor and against Defendant SharkNinja for damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.  Plaintiff reserves the right to amend the complaint to seek punitive damages if and when evidence or facts supporting such allegations are discovered.

## COUNT V
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

59.    Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

60.    At the time Defendant SharkNinja marketed, distributed and sold its pressure cookers to Plaintiff in this case, Defendant warranted that its pressure cookers were merchantable and fit for the ordinary purposes for which they were intended.

15

61.     Members of the consuming public, including consumers such as the Plaintiff and her daughter, were intended third-party beneficiaries of the warranty.

62.     Defendant SharkNinja's pressure cookers were not merchantable and fit for their ordinary purpose, because they had the propensity to lead to the serious personal injuries as described herein in this Complaint.

63.     Plaintiff used the pressure cooker with the reasonable expectation that it was properly designed and manufactured, free from defects of any kind, and that it was safe for its intended, foreseeable use of cooking.

64.     Defendant SharkNinja's breach of implied warranty of merchantability was the direct and proximate cause of Plaintiff's injury and damages.

**WHEREFORE**, Plaintiff demands judgment in her favor and against Defendant SharkNinja for damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.  Plaintiff reserves the right to amend the complaint to seek punitive damages if and when evidence or facts supporting such allegations are discovered.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendant SharkNinja for damages, including exemplary damages if applicable, to which she is entitled by law, as well as all costs of this action to the full extent of the law, whether arising under the common law and/or statutory law, including:

a.  judgment for Plaintiff and against Defendant;

b.  damages in excess of $75,000 to compensate Plaintiff for her injuries, economic losses and pain and suffering sustained as a result of the use of the Defendant SharkNinja's pressure cookers;

c.  pre and post judgment interest at the lawful rate;

d.  punitive damages on all applicable Counts as permitted by the law;

e.  a trial by jury on all issues of the case; and

f.  for any other relief as this Court may deem equitable and just, or that may be available under the law of another forum to the extent the law of another forum is applied, including but not limited to all reliefs prayed for in this Complaint and in the foregoing Prayer for Relief.

Respectfully submitted,

**KLINE & SPECTER, P.C.**

Date: <u>April 5, 2023</u>

<u>*/s/ Benjamin Present, Esq.*</u>
Benjamin Present, Esq.
1525 Locust Street, 12th Floor
Philadelphia, PA 19102
(215) 772-1000
benjamin.present@klinespecter.com

*In association with:*

**JOHNSON BECKER, PLLC**

Adam J. Kress, Esq.
*Pro Hac Vice to be filed*
Anna R. Rick, Esq.
*Pro Hac Vice to be filed*
444 Cedar Street, Suite 1800
St. Paul, MN 55101
(612) 436-1800 /612-436-1801 (fax)
akress@johnsonbecker.com
arick@johnsonbecker.com
***Attorneys for Plaintiff***